# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROGER ALLEN COSE,

                    Plaintiff,

  v.

MARY GORSKE and CHARLES LARSON,

                    Defendants.

OPINION & ORDER

14-cv-540-jdp

---

Pro se plaintiff and prisoner Roger Allen Cose is proceeding on claims that defendants Charles Larson and Mary Gorske failed to provide adequate treatment for his fractured fibula, in violation of the Eighth Amendment. Several motions are before the court: (1) defendants' motion for summary judgment, Dkt. 29; (2) Cose's motion for summary judgment, Dkt. 37; (3) Cose's motion for sanctions, Dkt. 49; and (4) Cose's motion "to dismiss" defendants' summary judgment motion, Dkt. 50, which is more accurately described as another motion for sanctions.

I will deny Cose's motions for sanctions because he has not shown that defendants engaged in any misconduct. I will grant defendants' summary judgment motion and deny Cose's summary judgment motion because no reasonable jury could find in Cose's favor on any of his claims. Although Cose experienced delays in receiving some treatment, he has not adduced any evidence that defendants were consciously refusing to provide care, which is what he must do to prove an Eighth Amendment violation.

## UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

In 1999, Cose was incarcerated in the Wisconsin Department of Corrections in the Dodge Correctional Institution, which is the intake facility. The medical intake form, which Cose signed, states that Cose fractured his left tibia and fibula in a motorcycle accident in 1976 and that Cose had suffered from a "leg discrepancy" since then. Dkt. 52, ¶ 5. The tibia and fibula are both located in the lower leg.

Medical staff took x-rays of Cose's ankle, among other things. The radiology report included the following information:

> LEFT ANKLE:
>
> Two views of the left ankle reveal old tibial and fibular fractures. There is an orthopedic side plate and screw traversing the distal fibula and a single screw traversing the medial malleolus. There are marked posttraumatic degenerative changes involving the ankle joint. No definite new fracture is seen.
>
> * * *
>
> LEFT LOWER LEG:
>
> Two views of the left lower leg again reveal the orthopedic side plate and screw traversing the distal tibia with the old tibial and fibular fractures noted. No acute fracture seen.

In 2003, Cose was transferred to the Waupun Correctional Institution, which is in Waupun, Wisconsin. On February 4, 2003, Cose had an appointment with defendant Gorske, a nurse practitioner employed at the Waupun prison. Cose and Gorske discussed Cose's injury to his lower left leg, among other medical conditions. She informed him that she would request an orthopedic referral. She also renewed prescriptions for ibuprofen and amitriptyline for chronic pain.

On September 9, 2003, Cose wrote in a health service request that he was still waiting to see a specialist. The following day, Gorske wrote that she had not received a response from her referral request, but she would submit a new one. Later the same day, Gorske submitted a request for an orthopedic referral to Ellen O'Brien.[1] On September 19, 2003, the referral was approved.

On October 13, 2003, O'Brien and defendant Larson, a physician at the prison, requested an x-ray of Cose's ankle because of continued swelling. Larson's name was included on the referral so that a health-care provider at the prison would receive the radiology report. On October 17, 2003, Cose had an appointment with O'Brien. After an examination, she recommended that Cose see an orthotist for a shoe modification to address the discrepancy in the length of his legs. She also requested a follow-up appointment after Cose was fitted for the shoe lift.

Department of Corrections staff approved O'Brien's recommendation for a referral to an orthotist. Larson submitted a request for a referral for a follow-up appointment with O'Brien. That referral was approved, but Cose never received another appointment with O'Brien. Larson does not know why.

On October 22, 2003, medical staff took an x-ray of Cose's left ankle. The radiology report included the following information:

> **LEFT ANKLE:**
>
> Three views left ankle are obtained and compared to previous examination 1999. The orthopedic side plate and screw transverse in the distal fibular shaft is again noted unchanged. The same orthopedic screw transverse in the medial malleolus is also noted

---

[1] The parties do not say where O'Brien was employed, but both sides seem to assume that she was not employed by the Wisconsin Department of Corrections.

>    unchanged. The overriding fracture at the distal fibular is again noted and appear[s] unchanged, as well. There is moderate narrowing involving the ankle mortise consistent with a posttraumatic degenerative change, unchanged. No acute fracture o[r] dislocation is seen.

Larson did not review the x-rays but he reviewed and initialed the radiology report. He did not inform Cose of the results because he did not see any changes in Cose's condition and because Cose was already under the care of an orthopedist.

On November 3, 2003, an orthotist evaluated Cose for a shoe lift. In December 2003, Cose received the shoe lift.

Larson transferred to another prison in December 2006. Gorske transferred to another prison in April 2010. Cose was transferred to the Stanley Correctional Institution in 2011.

In 2013, medical staff at the Stanley prison requested new x-rays. A radiology report included the following information:

>    [T]here is an overlapping fracture of the fibula, and osteoarthritis within the ankle. I reviewed the patient's old x-rays and in 1999 there is evidence of tibial and fibular fractures. Another x-ray of 10/2003 reveals an unchanged plate and screw and an overriding fracture at the distal fibula. We are unable to find if the degree of override has increased. The patient, however, has had an increase in his discomfort, mostly noted over the last three years.

Dkt. 38-3. The same nurse practitioner who wrote the radiology report later informed Cose that "[t]he x-ray report from 10/2003 states there is an overriding fracture so that means the this type of break has been there since at least then. Nonetheless, we will request orthopedic consult." Dkt. 15-13. In April 2013, Cose received a cast on his left ankle.

MOTIONS FOR SANCTIONS

Cose seeks sanctions against defendants on a number of grounds: (1) defendants misstated Cose's inmate number in their summary judgment materials; (2) one of defendants' summary judgment exhibits is numbered differently from the same exhibit defendants provided Cose in discovery; (3) Larson lied about his place of employment in his declaration; (4) defendants sent Cose documents related to another prisoner's lawsuit; (5) defendants misstated the date Cose was transferred to the Waupun Correctional Institution; (6) in 2013, prison staff allegedly denied Cose's requests to review his 1999 and 2003 x-rays; and (7) defendants denied Cose's discovery request to review the same x-rays. None of these contentions have any merit.

**Inaccurate inmate number.** Defendants acknowledge that they misstated Cose's inmate number in some of their summary judgment materials. But Cose's number is irrelevant to his claims, so the mistake was harmless. Cose cites no evidence that defendants deliberately misstated his inmate number or were trying to prejudice him in anyway. He says that the mistake is evidence that his case "is being confused or intertwined with someone else's case," Dkt. 49, at 2, but he does not identify a single document or piece of testimony submitted in this case that was inaccurately attributed to him. This mistake is not a ground for sanctioning defendants.

**Discrepancy in page numbers.** Cose says that he received the same medical record from defendants twice (once in response to a discovery request and once with defendants' summary judgment submissions) and that the Bates number on the document was "672" the first time he received it and "674" the second time he received it. He says this is evidence that

the medical records he received are "corrupt, altered, and no longer viable as a true copy of [his] medical record[s]." Dkt. 49, at 3.

The inference Cose has drawn from the page number discrepancy is not a reasonable one. As defendants explained to Cose, Bates numbers are added to documents during discovery to make them more manageable and easier to locate and cite later in the litigation. If documents are produced multiple times, it is possible for the same document to be identified with a different Bates number, but the discrepancy is not evidence that the content of the document has been altered in any way. And because Cose does not allege that the content of any particular exhibit submitted in this case is inaccurate, the discrepancy Cose identifies is not a ground for sanctions.

**Larson's place of employment.** In his declaration, Larson says that he transferred to the Fox Lake Correctional Institution in 2006 and he remains employed there. Dkt. 32, ¶ 2. Cose challenges this averment, pointing to a document in which the Wisconsin Department of Justice accepted service of Cose's complaint on Larson's behalf. Dkt. 7. That document lists "SCI" as Larson's place of employment, which Cose infers to mean Stanley Correctional Institution. This is important, Cose says, because Cose is incarcerated at the Stanley prison, so if Larson is there as well, it shows that Larson may be held liable for his continued failure to provide Cose appropriate treatment.

An acceptance of service form is not evidence and, even if it were, defendants filed a corrected version of that form a day after they filed the first form, correcting Larson's place of employment to "FLCI," or Fox Lake Correctional Institution. Dkt. 9. And even assuming that Larson is currently employed at the same prison where Cose is incarcerated, Cose does not

allege that Larson is responsible for his care or that he has had any contact with Larson at the Stanley prison. Thus, it is simply irrelevant where Larson works now.

**Other mistakes.** Cose says that defendants sent him documents related to another prisoner's lawsuit and that they misstated in their proposed findings of fact the date he was transferred to the Waupun Correctional Institution. Because Cose cites no evidence that these mistakes were intentional or that they prejudiced him in any way, they are not grounds for sanctions.

Cose again says that the mistakes are evidence that defendants have confused him with another prisoner, but he still identifies no relevant but false information about this lawsuit that defendants provided in this case. Defendants did not file the documents related to the other prisoner in this case and they did not rely on the documents in their summary judgment motion. Rather, defendants inadvertently mailed the documents to Cose. The documents had no bearing on the outcome of the case.

**Copies of x-ray films.** Cose says that prison staff (not defendants) refused to give him copies of his 1999 and 2003 x-ray films, both in 2013 and in 2016, and that counsel for defendants denied a January 2016 request as well. Any failure by prison staff other than defendants to provide records to Cose is outside the scope of this case. As for Cose's discovery request, counsel for defendants informed Cose that they did not have "access" to those records. Dkt. 27-3. Counsel did not explain further, but prison staff informed Cose that they did not keep copies of the films and he would have to contact the provider who took the x-rays. Dkt. 50-2, at 2–5. In 2016, staff told Cose that they contacted the provider, who informed them that the x-ray films had been destroyed after seven years. *Id.* at 6.

Cose challenges counsel's and prison staff's representation that they do not have a copy of the x-ray films, citing a progress note from 2013 in which a nurse practitioner at the Stanley prison wrote that she had "reviewed" Cose's "old x-rays" from 1999 and 2003. Dkt. 38-3. The nurse practitioner did not say whether she was referring to the films themselves or simply the radiology reports. But even if I assume that the nurse practitioner had the films in 2013, that does not mean that the Department of Corrections still had them in 2016. And if Cose believed that defendants were withholding documents the proper response was a motion to compel under Rule 37, not a motion for sanctions.

In any event, Cose does not explain how he believes the films could help him. He has copies of the radiology reports and he does not identify any reason to believe that the reports are inaccurate in any way. And because neither Larson nor Gorske reviewed the films, they would not be evidence of what defendants knew about Cose's condition. Even if the films showed something that the reports did not, the most they could prove is that defendants were negligent for failing to review the films. Because proof of negligence is not enough to prove an Eighth Amendment claim, I see no way that Cose was prejudiced by not having the films.

In sum, the conduct Cose discusses in his motions for sanctions shows at most that counsel for defendants made a few minor mistakes in their summary judgment materials. Because Cose has not shown that he was harmed in any way by those mistakes, the court will deny Cose's motions for sanctions in full.

MOTIONS FOR SUMMARY JUDGMENT

I understand Cose to be contending that defendants violated the Eighth Amendment in the following ways:

1) Gorske waited several months before prescribing pain medication for Cose;

2) Gorske waited several months before referring Cose to a specialist;

3) Both defendants failed to review Cose's October 2003 x-ray films;

4) Both defendants failed to inform Cose that the October 2003 radiology report showed that he had an "overriding fibula fracture";

5) Both defendants failed to ensure that Cose receive a follow-up appointment with an orthopedist;

6) Gorske discontinued Cose's pain medication without adequate justification;

7) Both defendants ignored Cose's "continuous[]" complaints about pain and swelling in his left leg.

The parties debate whether Cose included all of these claims in his complaint. Defendants also contend that Cose's claims against Larson (but not Gorske) are barred by the statute of limitations and the doctrine of qualified immunity. I need not consider any of those issues because I agree with defendants that no reasonable jury could find that either defendant violated Cose's Eighth Amendment rights.

A. **Legal standard**

A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate

indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997).

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

1) Did the prisoner need medical treatment?

2) Did the defendant know that the prisoner needed treatment?

3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment?

In response to a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999). Defendants do not challenge Cose's ability to show that he had a serious medical need as to any of his medical care claims, so I need not consider that issue. The key question is whether Cose has adduced sufficient evidence to allow a reasonable jury to find that defendants consciously refused to take reasonable measures to provide treatment. A reasonable jury may draw that inference if a treatment decision was "blatantly inappropriate" or represented "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [the defendant] did not base the decision on [medical] judgment." *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) (internal quotations omitted).

**B. Delay in receiving pain medication**

Cose says that he was supposed to receive a prescription for ibuprofen beginning in February 2003, but he did not actually receive the prescription until September 2003. Cose blames Gorske for the delay, but he cites no evidence to support that view. Cose's medical

records show that Gorske prescribed the medication in February 2003, Dkt. 47-1, and Cose identifies no reason that Gorske would have known that Cose wasn't receiving it. He does not allege that she was personally responsible for distributing his medication or that he informed her before September 2003 that he was not receiving his medication. Without evidence that Gorske knew that Cose wasn't receiving treatment, she cannot be held liable for violating Cose's Eighth Amendment rights.

## C. Delay in receiving referral for orthopedist

Gorske told Cose in February 2003 that she was going to request a referral to see an orthopedist, but Cose did not receive an appointment until October 2003. This claim has two parts. First, Cose says that Gorske failed to submit a referral request in February 2003. Second, when Gorske submitted the request in September 2003, Cose had to wait another month before seeing an orthopedist. No reasonable jury could find in Cose's favor on either claim.

As to the first claim, Gorske says that she did submit a request in February 2003. She did not provide any records to support her testimony, so a jury could reasonably infer otherwise. But that is not enough to prove an Eighth Amendment violation. Cose must show that Gorske *consciously* failed to take action. Gorske cannot be held liable under the Eighth Amendment simply because she forgot to submit a request. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996) ("[A] defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation."). Cose has not adduced evidence that Gorske acted intentionally or consciously.

Cose does not allege that he complained to Gorkse at any time before September 2003 and he does not cite any other evidence that she was aware that Cose had not received a referral. When Cose told Gorske in September 2003 that he was still waiting, Gorske submitted the

11

request immediately, showing that she was not trying to deny Cose care and that any previous failure to submit a request was an oversight.

As to the second claim, Cose says he that should not have had to wait another month to see an orthopedist. In the absence of an emergency, a month-long wait to see a specialist is not obviously unreasonable. Regardless, Cose has not adduced any evidence that Gorske had control over scheduling the appointment or could have done anything to get one sooner.

**D. Failure to review October 2003 x-ray films**

Neither defendant reviewed Cose's October 2003 x-ray films and Cose says that both of them should have done so. This claim fails as well. As to defendant Gorske, it is undisputed that she was not involved in ordering the x-ray. Thus, even assuming that Gorske was qualified to review the x-ray (which she denies), Cose has not identified any reason why she should have reviewed the films. As to defendant Larson, even assuming that Larson rather than the orthopedist was responsible for reviewing the results of the x-rays, it is undisputed that Larson reviewed the radiology report related to the x-rays. Because Cose does not identify any information that Larson could have obtained from reviewing the films that he did not have from reviewing the report, no reasonable jury could find either that Larson's failure to review the films was blatantly inappropriate or that Cose was harmed by the failure.

**E. Failure to inform Cose about results in radiology report**

Much of Cose's summary judgment materials are devoted to the contention that both defendants violated his Eighth Amendment rights by failing to inform him of the results in the October 2003 radiology report. Larson says that he did not inform Cose because the report didn't show any changes in Cose's condition since the 1999 radiology report. (Gorske says she was not involved in this decision.) Cose disagrees with Larson, but he does not allege that he

12

suffered any new injuries between 1999 and 2003. Instead, he notes that the 1999 report refers to "old" fractures, which he interprets to mean "healed." And he says that the 2003 report refers to "overriding" fractures, a term that is not used in the 1999 report. From this, he infers that the "overriding" fracture developed between 1999 and 2003.[2] To support that conclusion, he cites a statement from a nurse in 2013, who stated that Cose had an overriding fracture "at least" since 2003.

The evidence Cose cites does not support a conclusion that he suffered a new injury between 1999 and 2003. Although the two reports do not use identical language, the author of the 2003 report does not identify any changes in Cose's condition. Rather, the 2003 report states that "[t]he overriding fracture at the distal fibular is *again* noted and *appear[s] unchanged*, as well." And like the 1999 report, the 2003 report states that "[n]o acute fracture o[r] dislocation is seen." The nurse who treated Cose in 2013 did not give an opinion on whether Cose's condition changed between 1999 and 2003. In fact, she stated that she was "unable to find if the degree of override has increased." Dkt. 38-3.

In any event, the question under the Eighth Amendment is not whether a prisoner receives copies of all of his test results, it is whether the defendants consciously failed to provide needed treatment. Notably, Cose does not explain what treatment he believes that defendants should have provided as a result of the 2003 radiology report. Even in 2013, after Cose received another x-ray, the response of health-care staff was to refer Cose to an orthopedist, something that defendants had already done for Cose in 2003. Neither side cites evidence showing

---

[2] The parties do not explain what an "overriding" fracture is. One medical dictionary defines it as "[s]lippage of the lower fragment of a broken long bone upward and beside the proximal portion." *Stedman's Medical Dictionary* 1397 (28th ed. 2006).

whether the orthopedist received copies of the 1999 and 2003 x-ray films and radiology reports, but the important point is that Cose does not allege that either defendant prevented the orthopedist from reviewing that information. Regardless whether Cose's x-rays or radiology reports might support a view that Cose needed more treatment, that would be a matter for the orthopedist to decide in the first instance. Both Larson and Gorske say that they were deferring to the orthopedist and Cose cites no evidence showing that their decision to do so was obviously incorrect.

In sum, no reasonable jury could find that defendants had a duty under the Eighth Amendment to inform Cose of the results of his 2003 radiology report.

**F. Failure to schedule follow-up appointment with orthopedist**

Cose's orthopedist, Ellen O'Brien, asked for a follow-up appointment after her first and only examination of Cose in October 2003, but Cose never received a second appointment. Cose again blames defendants for this, but the evidence does not support his position.

It is undisputed that Larson submitted a request on Cose's behalf for a follow-up appointment with O'Brien. Cose says that Larson did not use the proper form for requesting a referral and speculates that the referral was not approved on that ground. But Cose does not cite any evidence that the request for a referral *was* denied (rather than simply lost or misrouted) or even that a referral request *can be* denied simply because medical staff don't use a particular form. At summary judgment, a party cannot rely on speculation to prove a particular fact. *Brown v. Advocate South Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012).

In any event, like some of Cose's other contentions, this one misses the point. Even if I assume that Larson used the wrong form and that that was the reason Cose didn't get another appointment with O'Brien, that would show only that Larson made a mistake. It would not

14

show that Larson was consciously refusing to help Cose, which is what Cose must show to prove an Eighth Amendment violation. Cose does not allege that he complained to Larson about not receiving the appointment or that Larson otherwise knew that Cose didn't receive one. If Cose means to contend that Larson should have checked later to make sure his referral was approved, that is another claim of negligence, not deliberate indifference.

Cose's claim against Gorske is even weaker. Even if I assume that Gorske knew that O'Brien had requested another appointment, Cose identifies no reason that Gorske would have known to intervene when Larson had already submitted a referral request. Again, Cose does not cite any evidence that Gorske knew Cose did not receive a second appointment.

In his reply brief, Cose says that "defendants" did not use the proper form because of a prison policy "that allows DOC medical providers to refuse a non-DOC provider's recommendations for serious medical conditions." Dkt. 56, at 12. Cose cites DOC IMP 300.03 (2003), which imposes requirements on approval for medical examinations by health-care staff outside the Department of Corrections. Dkt. 50-4. But Cose cites no evidence that he was denied any treatment because of this policy. Notably, the policy does not require staff to make requests for referrals on a particular form. Again, Cose cannot rely on speculation to prove his claim.

### G. Discontinuing ibuprofen

Cose says that Gorske discontinued his ibuprofen prescription in February 2004 without justification. Defendants object to this claim on the ground that Cose did not include it in his complaint. Cose also failed to submit any proposed findings of fact related to his medication being discontinued. But even if I overlook those objections, Cose has failed to create a genuine issue of material fact as to this claim.

15

In his reply brief, Cose supports this claim by citing defendants' response to one of his requests for admission.[3] In that response, Gorske admits that she discontinued Cose's ibuprofen and she provided several reasons: (1) Cose had not been using all the medication dispensed to him; (2) Cose had been prescribed ibuprofen for several months and taking ibuprofen long term can cause ulcers and kidney problems; (3) no physician had recommended that Cose take ibuprofen; and (4) if Cose still wished to take ibuprofen, he could purchase it himself at the canteen. This response does not help Cose because he does not dispute *any* of the grounds that Gorske cites. He says that Gorske should have substituted a different medication if she believed that ibuprofen could be harmful, but he does not allege that he objected to the decision at the time. He also does not allege that he was unable to afford ibuprofen in the canteen.

In light of Cose's failure to use all of his medication, it was not obviously unreasonable for Gorske to conclude that Cose did not need it anymore. If Cose disagreed, he could have submitted another health request, but he does not allege that he made any complaints about his medication at the time to Gorske or anyone else. Defendants are entitled to summary judgment on this claim.

## H. Ignoring complaints

In his declaration, Cose repeats an allegation from his complaint "that from 2003 to 2011, [he] continuously complained to defendants of [his] overwhelming pain and swelling in [his] lower left leg," but defendants refused to help him. Dkt. 40, ¶ 8. As an initial matter, this claim fails in part because Larson transferred to a different prison in 2006 and Gorske

---

[3] Cose did not submit those responses with his summary judgment materials, but defendants did. Dkt. 52, at 42–65.

16

transferred to a different prison in 2010. Cose could not have been making complaints to defendants when they were no longer working at the same prison. In any event, Cose does not identify a single instance in which either defendant ignored a complaint from Cose. In fact, Cose does not identify any contact he had with either defendant after early 2004. To create a genuine issue of material fact under Rule 56, a party must set forth "specific facts"; he may not "replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Because Cose has not provided any specific facts to support this claim, defendants are entitled to summary judgment.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Charles Larson and Mary Gorske, Dkt. 29, is GRANTED and plaintiff Roger Allen Cose's motion for summary judgment, Dkt. 37, is DENIED.

2. Cose's motions for sanctions, Dkt. 49 and Dkt. 50, are DENIED.

3. The clerk of court is directed to enter judgment in defendants' favor and close this case.

Entered February 12, 2018.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge